**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-440-11** |
| | : | |
| **v.** | : | |
| | : | |
| **TERRY WALKER** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT, TERRY WALKER'S, MOTION TO SUPPRESS PHYSICAL EVIDENCE, *NUNC PRO TUNC***

The United States of America, by Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Richard A. Lloret and Michael J. Bresnick, Assistant United States Attorneys, respectfully submits the Government's Response To Defendant, Terry Walker's, Motion to Suppress (docket number 908).

## I. PRELIMINARY STATEMENT

Defendant Terry Walker has filed a motion to suppress a set of keys taken from Terry Walker on or about April 14, 2002 at 2636 Daphne Road, Philadelphia, during the course of an investigation by Philadelphia Police. Counsel for the defendant alleges he only recently became aware that the government still had these keys in its possession and intended to introduce them at trial. The defendant alleges that the "police [] illegally searched the Defendant's person without probable cause or reasonable suspicion and incident to an illegal arrest/detention."

The defendant's motion is untimely and meritless, and should be denied.

## II. STATEMENT OF FACTS

### A. The Indictment

On February 21, 2007, a federal grand jury in the Eastern District of Pennsylvania

returned a 194-count fifth superseding indictment (the "indictment") against Alton Coles and 21 co-defendants, including Terry Walker. The indictment charges in Count One that eighteen of these defendants (referred to in the indictment as the Coles' Cocaine Gang ("CCG")), engaged in a conspiracy, led by Alton Coles and Timothy Baukman, to distribute approximately 1,200 kilograms of cocaine and approximately 600 kilograms of cocaine base ("crack") from 1998 to 2005, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). The indictment details specific criminal acts of the defendants, including Terry Walker's possession with intent to distribute cocaine and cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) (counts 177 and 178) and Terry Walker's possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (count 179), arising out of a search of 2636 Daphne Road that occurred on April 15, 2002, after the police encountered Mr. Walker at 2636 Daphne Road during their search for Randall Austin. Police were searching for Austin because they suspected he had committed a murder outside the Philadelphia Zoo on April 14, 2002.

**B. Detective Marano's Account of the Events of April 14, 2002**

At the trial of Alton Coles and five other defendants, which commenced on January 16, 2008, Det. Chris Marano testified about the events that led him to 2636 Daphne Road on or about April 14, 2002. A copy of excerpts of the transcript of Det. Marano's testimony of January 22, 2008 is attached as Exhibit "A" to this Response (page references in this Response are to the transcript pages, and are referred to as "Marano, ___").[1]

As part of a Southwest Philadelphia gun violence task force, Det. Marano

---

[1] Det. Marano is on leave this week, attending to a health care issue with his family.

responded to a report of a shooting near the Philadelphia Zoo on April 14, 2002.[2] Marano, 258, 259. When he arrived at the scene of the crime, he saw police removing two young men from a maroon colored Buick. The two men had been shot. Marano, 259. Det. Marano received a lead at the scene that a Mercedes CLK was involved in the shooting. Id.

Later the same day Det. Marano went to Fitzgerald Mercy Hospital, based on a report that the hospital was treating a person shot who had been shot. Marano, 260. While at the hospital, Det. Marano encountered a person who called himself Dante Tucker (in reality, Randall Austin), who had been shot in the hand. Marano, 262. Det. Marano also recovered a Glock envelope[3] covered with blood. Marano, 262-263. The serial number from the Glock traced to Randall Austin, who was arrested in February of 2002 with a gun with the same serial number. Marano, 263-264.

As a result of this encounter and the Glock, Det. Marano and his partner went the next day to 2636 Daphne Road ("Daphne Road"), a location associated with Austin. Marano, 264-265. When he arrived at Daphne Road, Det. Marano saw an Infiniti Q45 parked outside garage. He also saw the right hand door (of a set of two doors to a common garage on the ground floor) opened, and inside the garage, on the left hand side, a Mercedes CLK. Marano, 264-266. As Det. Marano flashed his flashlight into the garage, and looked under the Mercedes, he saw a pair of boots on the other side of the Mercedes. Id, at 266. It appeared to Det. Marano that

---

[2] Det. Marano began with the Philadelphia Police Department in 1990 and proceeded through the ranks until he was made a detective in 1996. He has served as a detective with the Police Department, in various capacities, including special drug investigations and violent crime investigations, since then. Marano, 257, 258.

[3] The type of envelope typically associated with a the purchase of a new Glock firearm. Marano, 263.

someone was crouching down behind the Mercedes. Id. Det. Marano called out for the person behind the Mercedes to come out, but received no response. Id. Det. Marano also saw car floor mats on the floor, with cleaning supplies "strewn about them, and obvious swipes across the floor mats as if they had been brushed or cleaned." Marano, 267. Det. Marano yelled again for whoever was in the garage to come out, again with no response. Id. At that point, Det. Marano held the rear of the property at gunpoint, his partner went to the front and secured it at gunpoint, and they notified homicide. Id.

At that point, focused on the garage, Det. Marano heard from his partner "look out." Marano, 273. Det. Marano saw a male (later identified as Terry Walker) "walking towards me, but not telling me he was walking towards me." Id. Walker had walked out of the front of Daphne Road and was coming down the alleyway next to the house, hugging the wall along 2636 Daphne Road. Id. Det. Marano's partner secured and patted down Walker, and quietly placed Mr. Walker into the police car, with handcuffs on. Id.

The two detectives then rushed into the garage, to the other side of the Mercedes, and saw there was no one there, just a pair of men's boots. Marano, 282. At that point they were still looking for Randall Austin. They decided to secure the property by holding it front and back and calling for additional police, as well as notifying homicide, so that homicide "can do what they have to do in the way of a search warrant." Marano, 282-283. Det. Marano related what happened next:

A. However, Terry Walker began to manipulate the car alarm on the Q-45, yelling and screaming from the car.

Q. All right, he's making noise from the car?

A. Yes.

Q. Yelling and screaming? And what happened as a result of him manipulating the car thing?

A. The alarm goes off, the lights flash, the horn blows.

Q. What's your immediate concern at that point?

A. That now whoever sent him outside, or whatever happened, why he came outside, the persons inside that location would now know that we were out there.

Q. What did you do then?

A. Another unit came, a 1900 wagon came. We placed Mr. Walker into the wagon, and obtained a set of keys from him.

Q. All right, what did you do?

A. Myself and my partner went in to secure the, what would be the second level of this apartment building, which is to say the garage would be the first level, the second level but the first apartment, it appeared . . . that the place was occupied. We wanted to secure that location of other persons and then notify homicide what we had.

Marano, 283. Det. Marano and his partner used some of the keys taken from Terry Walker, marked as Exhibit 401,[4] to enter the first floor apartment and perform a protective sweep. They found no one there. Marano, 285, 287. The keys unlocked the front door and the first floor apartment to Daphne Road.

## III. ARGUMENT

---

[4] The keys marked as Exhibit 401 did not include the alarm trigger for the Infiniti, based on the government's attorney's recollection of trial I.

**A. Defendant Has Waived His Right to Bring This Motion, Because it is Untimely Under the Court's Scheduling Order**

> Rule 12(b)(3) of the Federal Rules of Criminal Procedure requires motions to suppress evidence be made before trial. United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir.1997). Failure to make a motion to suppress before trial constitutes waiver unless the trial court grants relief from the waiver under Rule 12(e) for cause shown. Fed.R.Crim.P. 12(e); United States v. Ricco, 52 F.3d 58, 62 (4th Cir.1995).

United States v. Armstrong, 257 Fed.Appx. 682, 685 (4th Cir. 2007); accord, United States v. Lugo Guerrero, 524 F.3d 5, 11 (1st Cir. 2008); United States v. Jones, 241 Fed.Appx. 676, 677 (11th Cir. 2007); United States v. Collier, 246 Fed.Appx. 321, 335 (6th Cir. 2007). The court in this case entered an order, on April 20, 2007, requiring that all pre-trial motions be filed on or before July 1, 2007 (docket entry 353). The defendant filed timely pre-trial motions (docket entries 389, 390, 410) and participated in hearings on the motions, held on August 14, 2007 (docket entry 502). The defendant's motion is filed more than *one year* late, and on the eve of trial. The evidence seized from Mr. Walker was available to the defendant for inspection since 2006. The defendant has failed to show good cause for his untimely motion, and has waived his right to litigate the issue of the suppression of the keys seized from him on or about April 14, 2002.

**B. Det. Marano's Actions Constituted a Reasonable Terry Investigatory Detention of Terry Walker**

The defendant contends that the police action in handcuffing him and putting him into a police car during the Daphne Road investigation was unreasonable, and that keys taken from the defendant during the course of the police investigation should be suppressed. The defendant's position ignores the law.

Pursuant to Terry v. Ohio, 392 U. S.1, 27 (1968) where a police officer has a "reasonable, articulable suspicion that criminal activity is afoot," and that he is dealing with an armed and dangerous individual, the officer may conduct a pat down search for his own safety. Under Terry, a police officer does not need to be certain that the individual is armed. Rather, the test is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27. For instance, a police officer may pat down the occupants of a car and search the car's passenger compartment for his own protection. United States v. Bonner, 363 F.3d 213, 216 (3d Cir.2004).

Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U. S.119, 123 (2000). Indeed, while reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification. United States v. Givan, 320 F.3d 452, 458 (3d Cir.2003). Whether reasonable suspicion exists depends upon the totality of the circumstances, weighed in light of the officer's experience. United States v. Arvizu, 534 U. S.266, 273 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Arvizu, 534 U. S.266, 273, quoting United States v. Cortez, 449 U. S.411, 418 (1981). See also United States v. Brown, 159 F.3d 147, 149 (3d Cir.1998), citing United States v. Rickus, 737 F.2d 360 (3d Cir.1984) (deference is to be given to an officer's conclusions that are based on the officer's experience).

A police officer confronting a potentially dangerous situation also is permitted to

handcuff or detain people temporarily in order to meet the safety needs of the situation. Muehler v. Mena, 544 U.S. 93, 100 (2005) (police may handcuff occupants when searching for gang member and weapons); Torres v. United States, 200 F.3d 179, 185 (3d Cir. 1999) (police permitted to handcuff occupants of house while executing search warrant); Jewett v. Anders, 521 F.3d 818, 825-827 (7th Cir. 2008) (tackling and handcuffing non-defendant who fled suspect location not unreasonable detention); United States v. Atchley, 474 F.3d 840, 849 (6th Cir. 2007) (handcuffing appropriate when detaining but not arresting a suspect); Flowers v. Fiore, 359 F.3d 24, 29-30 (1st Cir. 2004) (handcuffing suspect during Terry investigation of violent crime permissible); United States v. Navarrete-Barron, 192 F.3d 786, 791-792 (8th Cir. 1999) (police may handcuff driver of vehicle while arresting passenger, based on safety concerns).

In this instance, Det. Marano, a very experienced police officer, was investigating a homicide. Terry Walker had just come out of the apartment where Det. Marano suspected Randall Austin was living. Det. Marano knew that a Mercedes CLK was in the garage at Daphne Road, and that the car matched the description given to him at the Zoo of a car involved in the homicide. Det. Marano believed someone was in the garage, and had seen car floor mats on the garage floor that had obviously just been cleaned, which would be consistent with activity of someone bleeding after having been shot at the homicide scene. Det. Marano had just seen a person he believed was Randall Austin at the hospital, bleeding from a gun shot wound, and had recovered at the hospital a blood soaked Glock envelope that traced back to Randall Austin. After the police detectives put Walker in handcuffs in a police car, Walker interjected himself in the dangerous situation, making it far more dangerous, by manipulating his keys and activating the alarm on the Infiniti in the driveway while screaming and yelling from the police car,

obviously trying to warn someone that the police were present. That Det. Marano relieved Mr. Walker of his keys, after Mr. Walker had tried to warn the person or persons in the house that police were outside, was a reasonable and prudent thing to do, under the circumstances, and certainly fell within the ambit of reasonable police action under Terry.[5] The rationale underlying Terry is to permit the police to take reasonable and prudent action for their own safety when confronting a dangerous situation. Mr. Walker made his keys a focal point for Det. Marano. Det. Marano's assessment of the danger that he and his partner faced by Walker's actions in manipulating his keys so as to set off the alarm on the Infiniti was reasonable and prudent. It was reasonable for Det. Marano to take away Mr. Walker's keys, and then to deal with the emergency Mr. Walker had just created. Det. Marano's plan, before Mr. Walker's intervention, was to wait for back-up. After Mr. Walker set off the alarm on the Infiniti and yelled to whoever was in the house, Det. Marano's plan had to change to meet the circumstances, and change it did, quite reasonably so. The police actions in handcuffing Mr. Walker in the police car, and then seizing his keys, were reasonable, prudent, and a justified detention under Terry.[6]

---

[5] Mr. Walker does not contend that entry into the first-floor apartment was unjustified, under the circumstances. See, e.g., United States v. Newman, 472 F.3d 233, 237 (5th Cir. 2006) (entry into apartment justified under exigency where security system had alerted the residents to the agents' approach); see Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 298, 299 (1967) (police officers acted reasonably when they entered a house without a warrant, after having received information that an armed robber had just entered the house). Mr. Walker only seeks suppression of the keys taken from Mr. Walker.

[6] Det. Marano has been on leave and has not been available since the time Mr. Walker filed his motion. The government believes that an additional basis for denying the suppression motion may be the "inevitable discovery" of the keys, as part of an inventory search of Mr. Walker and his car. "If the prosecution can establish by a preponderance of the evidence that the information ultimately would have been discovered by lawful means . . ." it may not be suppressed. Nix v. Williams, 467 U.S. 431 (1984). The government also believes that Det. Marano had probable cause to arrest Mr. Walker as an accessory after the fact in aid of Randall

## IV. CONCLUSION

The defendant's motion is untimely under the court's previous order setting the time for filing pretrial motions. The defendant has failed to demonstrate good cause for his failure to bring the motion in timely fashion. We are now on the eve of trial litigating a motion that should have been brought a year ago. The motion is without merit and should be denied. The government requests that the court enter the order submitted with this Response.

Respectfully submitted,

LAURIE MAGID
Acting United States Attorney

______________________________
RICHARD A. LLORET
Assistant United States Attorney

______________________________
MICHAEL J. BRESNICK
Assistant United States Attorney

Austin, a murderer, under 18 Pa.C.S. § 5105 ("A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he: (1) harbors or conceals the other [or] . . .(4) warns the other of impending discovery or apprehension . . ."). Com. v. Calderini, 416 Pa.Super. 258, 267, 611 A.2d 206, 210, n. 3 (Pa.Super.1992). A search incident to arrest would clearly have been appropriate, in the presence of probable cause for the arrest of Mr. Walker. New York v. Belton, 453 U.S. 454, 460 (1981); Rawlings v. Kentucky, 448 U.S. 98, 111 (1980). However, the trial transcript of Det. Marano does not directly address these subjects, since they obviously were not germane to the first trial. Without interviewing Det. Marano and offering Det. Marano's testimony on the subject, the government cannot say precisely what would have, or did, happen to Mr. Walker after the protective sweep of the apartment by Detectives Marano and McDermott. The government requests leave to revisit these issues, if necessary, after Det. Marano returns from leave, since the defendant's late filed motion is the reason this issue cannot be fleshed out at this time.

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Response by the United States was served on counsel, below, by email or by regular mail, on the date indicated below.

Michael J. Engle
123 South Broad Street
Philadelphia, PA 19109
Tel: (215) 985-4275
Fax: (215) 985-4592
Email: mjeesq@msn.com
Counsel for Terry Walker (11)

RICHARD A. LLORET
Assistant United States Attorney

Dated: July 29, 2008

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-440-11** |
| | : | |
| **v.** | : | ________________ |
| | : | |
| **TERRY WALKER** | : | |

**ORDER DENYING THE DEFENDANT,**
**TERRY WALKER'S, MOTION TO SUPPRESS PHYSICAL**
**EVIDENCE, *NUNC PRO TUNC***

This matter comes before the Court on the defendant, Terry Walker's, motion to suppress certain physical evidence, namely, a set of keys, seized from him during a police investigation on April 15, 2002. For the reasons elaborated upon from the bench at the time of hearing on July 30, 2008, the defendant's motion is denied as untimely, under the Court's previous order setting a schedule for filing motions under Fed. R. Crim. P. 12(b), which required that all pre-trial motions be filed on or before July 1, 2007. The defendant's motion is more than one year late, and filed on the eve of trial. The defendant also has failed to establish good cause for the inordinate delay in filing his motion, under Rule 12(e). In addition, the court finds that the defendant's motion is without merit, under the law, and denies it for that reason, as well.

BY THE COURT:

____________________________________
HONORABLE R. BARCLAY SURRICK
*Judge, United States District Court*