**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 05-440-10** |
| **TERRY WALKER** | : | |

**GUILTY PLEA MEMORANDUM**

The United States of America, by Laurie Magid, Acting United States Attorney for the Eastern District of Pennsylvania, and Michael J. Bresnick and Richard A. Lloret, Assistant United States Attorneys, respectfully submits this Guilty Plea Memorandum to assist the Court in accepting the defendant's guilty plea in this matter on October 31, 2008.

## I. THE INDICTMENT

On February 21, 2007, a federal grand jury returned a 194-count Fifth Superseding Indictment (the "indictment") charging the defendant Terry Walker with conspiracy to distribute 50 grams or more of cocaine base ("crack") and 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) (Count One); distributing cocaine in violation of 21 U.S.C. § 841(a) (Count 57, since dismissed on the government's motion), possessing cocaine and cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a) (Counts 177 and 178), and possessing firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count 179). The defendant has indicated he wishes to plead guilty to Count 178, charging him with possessing approximately 26 grams of cocaine base ("crack") with the intent to distribute on or about April 14, 2002 at 2636 Daphne Road in Philadelphia, Pennsylvania. Defendant, who has

received and is now serving a life sentence in state prison for murder, is expected to enter his plea of guilty at a hearing scheduled for 2:00 p.m. on October 31, 2008.

## II. PLEA AGREEMENT

Under Federal Rule of Criminal Procedure 11, the defendant is expected to sign a written plea agreement, a copy of which is attached, shortly prior to the plea hearing scheduled in this matter. The government summarizes the terms of the plea agreement as follows, but the agreement itself controls:

- The defendant agrees to plead guilty to Count 178 of the Fifth Superseding indictment.

- The defendant agrees to pay a fine set by the court and a special assessment of $100.

- At the time of sentencing, the government will move to dismiss Counts 1, 177 and 179 of the indictment as to this defendant.

- The parties agree that this plea agreement is made pursuant to Fed.R.Crim.P. 11(c)(1)(C) and that an appropriate sentence is 5 years incarceration, to be served concurrently with the defendant's current sentence of life imprisonment in the Commonwealth of Pennsylvania, with a recommendation for credit for time served to date. If the Court rejects this plea agreement, then the agreement is void.

- The defendant understands, agrees and has had explained to him by counsel that the Court may impose the following statutory maximum and mandatory minimum sentences based on the offense charged in Count 178: 40 years imprisonment, a 5-year mandatory minimum term of imprisonment, a mandatory minimum 4 years of supervised release up to a lifetime of supervised release, a $2,000,000 fine, a $100 special assessment, and forfeitures as described in the Notice of Forfeiture in the indictment

- The defendant may only withdraw his plea because the Court declines to accept the plea, under Rule 11(C). No one has promised or guaranteed to the defendant that the Court will accept the plea.

- The parties agree and stipulate that the cocaine base involved in this case is "crack" as defined in USSG § 2D1.1, Note D and that it weighed approximately 26 grams.

- The defendant waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, except that if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence. If the government does not appeal, then the defendant may file a direct appeal but may raise only a claim that the sentencing judge, having accepted this plea agreement, exceeded the 5 year sentence contemplated by the plea.

- The defendant also waives any right to request or receive from the United States any records pertaining to the investigation or prosecution of this case, including under the Freedom of Information Act or the Privacy Act. Defendant also waives any right to require DNA testing of any physical evidence in the possession of the government.

- The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and his lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

- The parties have made no additional promises, agreements or understandings other than those set forth in this written guilty plea agreement.

## III. ELEMENTS OF OFFENSE

To prove a violation of 21 U.S.C. § 841(a), as charged in Count 178, the government must prove the following essential elements:

1. The defendant knowingly possessed

2. More than 5 grams, that is, approximately 26 grams, of cocaine base, a Schedule II controlled substance

3. With the intent to distribute.

## IV. STATUTORY MAXIMUM SENTENCE

The statute charged in Count 178 carries the following statutory maximum and mandatory minimum sentences: a mandatory minimum term of 5 years imprisonment and a maximum of 40 years imprisonment; a mandatory minimum 4 years of supervised release up to lifetime of supervised release, an $2,000,000 fine, and a $100 special assessment. Forfeiture of assets in accordance with the Notice of Forfeiture in the indictment may also be ordered

Further, supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 3 years per count of conviction in the case of Class B felonies. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

## V. FACTUAL BASIS FOR THE PLEA

If this case proceeded to trial, the government would prove the defendant's possession with intent to distribute with the following evidence.

The government would demonstrate that in 2002 Terry Walker was part of a conspiracy run by Alton Coles and Timothy Baukman to distribute cocaine and cocaine base ("crack"). Randall Austin was part of this conspiracy, as well.

Det. Chris Marano and Det. Joseph McDermott would testify to the following set of events at 2636 Daphne Road on or about April 14-15, 2002.

As part of a Southwest Philadelphia gun violence task force, Det. Marano responded to a report of a shooting near the Philadelphia Zoo on April 14, 2002.When he arrived at the scene of

the crime, he saw police removing two young men from a maroon colored Buick. The two men had been shot. Det. Marano received a lead at the scene that a Mercedes CLK was involved in the shooting.

Later the same day Det. Marano went to Fitzgerald Mercy Hospital, based on a report that the hospital was treating a person shot who had been shot. While at the hospital, Det. Marano encountered a person who called himself Dante Tucker (in reality, Randall Austin), who had been shot in the hand. Det. Marano also recovered a Glock envelope[1] covered with blood. The serial number from the Glock traced to Randall Austin, who was arrested in February of 2002 with a gun with the same serial number.

As a result of this encounter and the Glock, Det. Marano and his partner went the next day to 2636 Daphne Road ("Daphne Road"), a location associated with Austin. When he arrived at Daphne Road, Det. Marano saw an Infiniti Q45 parked outside garage. He also saw the right hand door (of a set of two doors to a common garage on the ground floor) opened, and inside the garage, on the left hand side, a Mercedes CLK. As Det. Marano flashed his flashlight into the garage, and looked under the Mercedes, he saw a pair of boots on the other side of the Mercedes. Det. Marano called out for the person behind the Mercedes to come out, but received no response. Det. Marano yelled again for whoever was in the garage to come out, again with no response. At that point, Det. Marano held the rear of the property at gunpoint, his partner Det. McDermott went to the front and secured it at gunpoint, and they notified homicide.

Focused on the garage, Det. Marano heard Det. McDermott yell "look out." Det. Marano saw a male (later identified as Terry Walker) "walking towards me, but not telling me he was

[1] The type of envelope typically associated with a the purchase of a new Glock firearm.

walking towards me." Walker had walked out of the front of Daphne Road and was coming down the alleyway next to the house, hugging the wall along 2636 Daphne Road. Det. McDermott secured and patted down Walker, and quietly placed Mr. Walker into the police car, with handcuffs on.

The two detectives then rushed into the garage, to the other side of the Mercedes, and saw there was no one there, just a pair of men's boots. At that point they were still looking for Randall Austin. They decided to secure the property by holding it front and back and calling for additional police, as well as notifying homicide, so that homicide "can do what they have to do in the way of a search warrant." Terry Walker then began to manipulate the car alarm on the Q-45, yelling and screaming from the car. The car alarm went off, the lights flashed, and the horn blew. Det. Marano immediately concluded Walker was trying to warn someone inside the residence at 2636 Daphne Raod. The two detectives put Walker into a police wagon and obtained a set of keys from him. Det. Marano and Det. McDermott used some of the keys taken from Terry Walker to enter the first floor apartment and perform a protective sweep. The keys unlocked the front door and the first floor apartment to Daphne Road.

Inside Daphne Road investigators found a number of firearms and a quantity of drugs, including approximately 26 grams of cocaine base ("crack"). The drugs were tested by the police laboratory and the suspected crack was confirmed to be 26 grams of cocaine base, a Schedule II controlled substance, by the police laboratory.

The government would also produce several cooperating witnesses associating Terry Walker in cocaine dealing with Randall Austin, and associating Terry Walker in cocaine dealing with Alton Coles, at or about the time of the Daphne Road seizure.

The government would establish that the drugs seized during various search warrants and arrests were cocaine and cocaine base ("crack") by testimony of qualified chemistry laboratory analysts. The government would also establish the relationships between the physical evidence seized and Mr. Walker by expert testimony from a well qualified police narcotics expert.

The government has summarized some, but not all, of the evidence it would introduce at the trial of this matter. The government submits that the evidence summarized is sufficient to establish an independent basis for acceptance of the guilty plea by the defendant.

Respectfully submitted,

LAURIE MAGID
Acting United States Attorney

________________________________
RICHARD A. LLORET
MICHAEL J. BRESNICK
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I certify that a copy of the Government's Guilty Plea Memorandum was served by email or fax on the following defense counsel:

Michael J. Engle
123 South Broad Street
Philadelphia, PA 19109
Tel: (215) 985-4275
Fax: (215) 985-4592
Email: mjeesq@msn.com
Counsel for Terry Walker (11)

______________________________
RICHARD A. LLORET
Assistant United States Attorney

Date: October 29, 2008